THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTHONY RACHELLS | ) |
|     Plaintiff | ) CASE NO. 1:05CV2397 |
|   v. | ) JUDGE WELLS |
| | ) (JURY DEMAND) |
| CINGULAR WIRELESS of Seven Hills, Ohio; CINGULAR WIRELESS of Atlanta, Georgia; AT&T WIRELESS; SBC of Cleveland, Ohio; SBC of San Antonio, Texas; JOHN DOE CORPORATION and JOHN DOE INDIVIDUALS as known only to SBC, CINGULAR WIRELESS, and/or AT&T WIRELESS | ) ) ) ) ) ) ) |
|     Defendants | ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2) and 12(b)(6) OF DEFENDANTS "CINGULAR WIRELESS," "AT&T WIRELESS," and "SBC"**

**I.    INTRODUCTION**

Movants herein are Cingular Wireless Employee Services LLC ("Cingular"), New Cingular Wireless Services, Inc. f/k/a AT&T Wireless Services, Inc. ("AT&T Wireless"), The Ohio Bell Telephone Company d/b/a SBC Ohio ("SBC Ohio") and SBC Communications Inc. ("SBC Communications Inc.") (collectively, "Movants"). By filing a Motion to Dismiss and the instant supporting Memorandum, Movants do not concede that they have been named as Defendants in this action or that the Court has personal jurisdiction over any or all of them. As set forth fully below, Plaintiff has not named a single Defendant in this action that is a legal entity with the capacity to be sued. Moreover, even if Plaintiff had properly named any legal entity as a party, every single claim in the Complaint, in whole or in part, fails to state a claim

upon which relief can be granted. For these reasons, the Complaint should be dismissed in its entirety.

## I. BACKGROUND

### A. Procedural History

Plaintiff, Anthony Rachells ("Plaintiff"), filed a Complaint initiating this action on October 11, 2005. Copies of the Complaint were served to the addresses captioned thereon. This Court granted a Motion for Extension of Time to Respond to the Complaint and ordered that all answers or other responsive pleadings be filed on or before December 2, 2005. A Motion to Dismiss has been filed concurrently with this Memorandum.

### B. Factual Allegations in Complaint

The allegations in Plaintiff's Complaint, which must be taken as true for purposes of a Motion to Dismiss pursuant to Rule 12(b)(6) are as follows: Plaintiff is an African-American male. (Compl. at ¶ 2). Plaintiff alleges that "Cingular Wireless," "AT&T Wireless," and "SBC" are or were corporations duly licensed to conduct business in Ohio. (Compl. at ¶ 3). In December 1996 "Plaintiff was hired by the Defendant Cingular/SBC to work in its retail stores." (Compl. at ¶ 5). Throughout his tenure "with Cingular/SBC" Plaintiff received promotions and awards. (Compl. at ¶¶ 6-7).

Plaintiff further avers that, during his tenure with "Cingular/SBC," he filed "complaint(s) against several white co-workers and supervisors because of discriminatory and retaliatory actions taken against him, including receiving unfavorable false performance reviews." (Compl. at ¶ 8). On or about January 31, 2005, Plaintiff was informed that his employment would be terminated in 60 days, and the termination was "allegedly based on a bogus assessment score

- 3 -

received during a sham interviewing process with Defendants Cingular/SBC and AT&T John Doe Corporation and John Doe Individuals." (Compl. at ¶¶ 9-10).

The Complaint contains eight different Counts, none of which include any factual allegations beyond those identified above. The Counts are all stated against all "Defendants," and are as follows: race discrimination (Count I); unjust termination (Count II); slander (Count III); "liable [sic]" (presumably libel) (Count IV); retaliation (Count V); breach of contract (Count VI); violation of Equal Protection laws (Count VII); and intentional and negligent infliction of emotional distress (Count VIII).

      C.     <u>Facts Regarding "Cingular Wireless," "AT&T Wireless" and "SBC"</u>

For purposes of a Motion to Dismiss pursuant to F.R.C.P. 12(b)(2), the following facts are supported by the attached Affidavits: "Cingular Wireless," "AT&T Wireless" and "SBC" are not legal entities with the capacity to be sued. (Affidavit of Starlene Meyerkord, "Meyerkord Aff.," attached hereto as Exhibit "A," at ¶3); (Affidavit of Carolyn J. Wilder, "Wilder Aff.," attached hereto as Exhibit "B," at ¶¶3, 7). Rather, "Cingular Wireless," "AT&T Wireless" and "SBC" are all trade names that have been used by numerous legal entities. (Meyerkord Aff. at ¶4); (Wilder Aff. at ¶¶4, 8).

SBC Communications Inc. is a Delaware Corporation with its principal place of business in San Antonio, Texas. (Meyerkord Aff. at ¶5). SBC Communications Inc. is a telecommunications holding company that does not provide telecommunications services. Those services are provided by its subsidiaries. (Meyerkord Aff. at ¶6). While SBC Communications Inc. has registered its corporate name with the Ohio Secretary of State, SBC Communications Inc. is NOT licensed to conduct business in Ohio. (Meyerkord Aff. at ¶ __). Plaintiff was never employed by SBC Communications Inc. (Meyerkord Aff. at ¶8). SBC Communications Inc. does not conduct any business, maintain any employees, own any real estate, own any personal property, or contract to supply goods or services in Ohio. (Meyerkord Aff. at ¶¶9-12). SBC Ohio is a wholly separate legal entity from SBC Communications Inc. (Meyerkord Aff. at ¶14).

**II.**     <u>**LEGAL STANDARD: MOTION TO DISMISS**</u>

      A.     <u>Failure To State a Claim (F.R.C.P. 12(b)(6))</u>

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all factual


allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996). However, "a legal conclusion couched as a factual allegation" should not be accepted as true. Davidson v. Weltman, Weinberg & Reis, 285 F. Supp.2d 1093, 1096 (S.D. Ohio 2003). Well-pleaded allegations allege *specific facts* and do not merely rely upon conclusory statements. The Court must dismiss claims if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Every Federal Circuit Court of Appeals, including the Sixth Circuit, that has considered the issue, has held that a Court may consider documents of public record in deciding motions to dismiss pursuant to Rule 12(b)(6). Passa v. City of Columbus, 123 Fed. Appx. 694, 697 (6th Cir. 2005) (citing cases); see also Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001) (stating that a Court may take documents of public record into account without converting a motion to dismiss to one for summary judgment).

    B.    <u>Lack of Personal Jurisdiction (F.R.C.P. 12(b)(2))</u>

Plaintiff bears the burden of demonstrating that personal jurisdiction exists. Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). Personal jurisdiction exists only if it is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment. Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980). A defendant that is not physically present in the forum state must have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotation omitted). The "minimum contacts" requirement is met when "the Defendant's conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). "Random," "fortuitous," or "attenuated" activity is constitutionally inadequate as a basis for personal jurisdiction. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984).

## III.    ARGUMENT

### A.    Motion to Dismiss Parties

As a matter of law, "Cingular Wireless," "AT&T Wireless" and "SBC" should be dismissed from the action pursuant to F.R.C.P. 12(b)(2) and 12(b)(6).

#### 1.    "Cingular Wireless," "AT&T Wireless" and "SBC" Are Not Legal Entities With the Capacity to Be Sued

Plaintiff has named as Defendants "Cingular Wireless," "AT&T Wireless" and "SBC." However, none of these are corporate entities at all, but instead are brand names that have been utilized by various corporate entities. (Meyerkord Aff. at ¶4); (Wilder Aff. at ¶¶4, 8). "It is well established that both plaintiff and defendant in a lawsuit must be legal entities with the capacity to be sued." Patterson v. V & M Auto Body, 63 Ohio St. 3d 573, 574 (Ohio 1992). In Patterson, the Ohio Supreme Court reversed the entry of judgment where the defendant named in the complaint was solely a trade name and the Plaintiff had been notified at least three times of this fact.[1] Patterson, 63 Ohio St. 3d at 576.

---

[1] In order to avoid litigation costs associated with filing the instant Motion to Dismiss, the undersigned counsel provided Plaintiff's counsel with notice that no "AT&T Wireless" or "SBC" entity should be named as a Defendant in the matter. Notwithstanding, Plaintiff's counsel repeatedly failed to respond to requests to amend the Complaint.

Because there is not a single legal entity with the capacity to be sued named as a Defendant in this action, the case should be dismissed in its entirety.

### 2. This Court Does Not Have Personal Jurisdiction Over SBC Communications Inc.

While "SBC" is not a separate legal entity, there are entities at the addresses listed on the Complaint that utilize the brand name "SBC." SBC Ohio maintains its principal place of business in Cleveland, Ohio. SBC Communications Inc., a separate legal entity from SBC Ohio, is a Delaware Corporation with its principal place of business in San Antonio, Texas. (Meyerkord Aff. at ¶¶5, 13).

Even if Plaintiff had properly named SBC Communications Inc. as a Defendant, the Court would still be compelled to dismiss it as a party because there is no basis for personal jurisdiction over SBC Communications Inc. in Ohio. SBC Communications Inc. does not have the necessary "minimum contacts" with Ohio "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (quotation omitted).

Numerous federal courts have dismissed holding companies for lack of personal jurisdiction where they have a subsidiary in the forum state. See, e.g., Rates Technology Inc. v. Nortel Networks Corp., 399 F.3d 1302 (Fed. Cir. 2005); Invacare Corp. v. Sunrise Medical Holdings, Inc., No. 1:04 CV 1439, 2004 U.S. Dist. LEXIS 28169 (N.D. Ohio 2004) (attached hereto as Exhibit "C"); Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc., 23 F. Supp. 2d 796 (N.D. Ohio 1998). In Invacare, the plaintiff named various related entities as defendants, including a holding company which was alleged to have sold certain products through a subsidiary in the forum state. Invacare, 2004 U.S. Dist. LEXIS 28169 at * 3.

Seeking dismissal for lack of personal jurisdiction, the holding company in <u>Invacare</u> submitted an affidavit that averred the following:  (1) it was incorporated outside of Ohio and maintained its principal place of business outside of Ohio; (2) it did not conduct any business in Ohio; (3) it was not registered to do business in Ohio; (4) it did not maintain any employees, agents, offices, books, records or bank accounts in Ohio; (5) it did not maintain a mailing address or telephone listing in Ohio; (6) it did not manage or control its subsidiary; and (7) it did not pay the salaries of its subsidiaries employees or finance the subsidiary in any way. <u>Id.</u> at *19-20.

The Court in <u>Invacare</u> rejected the plaintiff's "agency" theory as a basis for personal jurisdiction over the holding company. <u>Id.</u> at *21-22.  The Court went on to state that "***a parent corporation is generally not subject to personal jurisdiction simply because its subsidiary is present within a district***,"  and held that the plaintiff failed to establish personal jurisdiction over the holding company. <u>Id.</u> at 24, 26 (emphasis added).

Similarly, in both <u>Rates Technology</u> and <u>Iron Workers</u> (also a Northern District of Ohio case), the Courts held that out-of-forum holding companies were not subject to personal jurisdiction where their subsidiaries were located in the forum state.  In <u>Iron Workers</u>, the Court dismissed a defendant for lack of personal jurisdiction because it was "solely a holding company" and it "had no office, place of business, mailing address, bank account, telephone listing, real estate or personal property in Ohio."  <u>Iron Workers</u>, 23 F. Supp. 2d at 801. Additionally, the defendant holding company did not pay taxes in Ohio, was not licensed or qualified to do business in Ohio, had no employees in Ohio, and did not contract to supply goods or services in Ohio. <u>Id.</u>

Here, of course, SBC Communications Inc. is in the same position as the holding company defendants in <u>Invacare</u> and <u>Iron Workers</u> that were dismissed for lack of personal

jurisdiction. SBC Communications Inc. is neither incorporated nor maintains a principal place of business in Ohio. (Meyerkord Aff. at ¶5). Moreover, despite Plaintiff's allegations to the contrary, SBC Communications Inc. is NOT licensed to do business in the State of Ohio. (Meyerkord Aff. at ¶7).[2] Plaintiff was never employed by SBC Communications. (Id. at ¶8). SBC Communications Inc. does not conduct any business, maintain any employees, own any real estate, own any personal property, or contract to supply goods or services in Ohio. (Meyerkord Aff. at ¶¶9-12).

Should the Court decline to dismiss "SBC" (thereby dismissing SBC Ohio and SBC Communications Inc.) as a non-legal entity that is improperly named in the action, it must dismiss SBC Communications Inc. for lack of personal jurisdiction.

### 3. Claims Regarding "AT&T Wireless" Should Be Stricken or Dismissed for Failure to State a Claim

As explained above, "AT&T Wireless" is not, and never has been, a legal entity with the capacity to be sued. Moreover, New Cingular Wireless Services LLC, and entity formerly known as "AT&T Wireless Services, Inc.," no longer even uses the brand name AT&T Wireless.

However, even if Plaintiff had properly sued an entity using the AT&T Wireless brand name, he has failed to state a claim upon which relief may be granted against any such entity. The only allegations in the Complaint regarding "AT&T Wireless" are contained in Plaintiff's jurisdictional statement and his statement regarding the parties. (Compl. at ¶¶ 1, 3). In the Statement of Facts, Plaintiff alleges only that he was hired by "Defendant Cingular/SBC" in

---

[2] Even if SBC Communications Inc. was registered to do business in Ohio, which it clearly is not, this would not be determinative of the personal jurisdiction issue. "Qualifying to do business in a state and appointing an agent for service of process there do not amount to a 'general business presence' of a corporation that could sustain an assertion of general jurisdiction." DNH, L.L.C. v. IN-N-OUT Burgers, 381 F. Supp.2d 559, (E.D. La. 2005); see also Felch v. Transportes Lar-Mex SA de CV, 92 F.3d 320, 328 ("[A]pplying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another.").

December 1996. (Compl. at ¶ 5). Plaintiff does not allege that he was hired by "AT&T Wireless," employed by "AT&T Wireless," discriminated against by "AT&T Wireless," or any other action or inaction by "AT&T Wireless." Instead he alleges that during his tenure with "Cingular/SBC" he was awarded several awards, and that during his tenure with "Cingular/SBC," he filed complaints against co-workers and supervisors. (Compl. at ¶¶ 7-8).

In sum, even if "AT&T Wireless" is not dismissed as a non-entity, it should be dismissed for failure to state a claim upon which relief can be granted.

B.  Motion to Dismiss Claims

1.  COUNT I: Plaintiff Failed to Exhaust His Administrative Remedies on His "Federal Law" Discrimination Claims Against "AT&T Wireless" and "SBC"

Count I of the Complaint purports to state a cause of action for "racial discrimination prohibited by the Ohio Revised Code and Federal law." (Compl. at ¶ 12). While the Complaint does not identify the source of "Federal law" relied upon for the racial discrimination claim, it is presumed for the purposes herein that Plaintiff seeks to state a claim for unlawful discrimination under Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination on the basis of, among other things, race. 42 U.S.C. § 2000e-2(a).

As a pre-requisite for filing a discrimination claim under Title VII, a plaintiff must exhaust his or her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and must receive a "right to sue" letter prior to filing a lawsuit. 42 U.S.C. § 2000e-5(f)(1). The failure to exhaust administrative remedies requires the dismissal of a Complaint pursuant to Rule 12(b)(6). Howard v. Seaway Food Town, Inc., 63 Fed. Appx. 837, 838-39 (6th Cir. 2003).

Plaintiff's Complaint includes a copy of correspondence from the EEOC stating that a charge of discrimination filed by the Plaintiff was denied. (July 12, 2005 Correspondence, attached hereto as Exhibit "D"). However, the correspondence attached by Plaintiff, and the Charge of Discrimination itself, make clear that Plaintiff named only "Cingular Wireless" as the Respondent in the EEOC Charge. (Charge of Discrimination, attached hereto as Exhibit "E").[3] Thus, Plaintiff failed to exhaust his administrative remedies against "AT&T Wireless" and "SBC" [Ohio or Communications Inc.]. Accordingly, if the Court declines to dismiss "AT&T Wireless" and/or "SBC" as parties to the case, the Federal discrimination claims against them must be dismissed.

2. <u>COUNT II: Ohio Does Not Recognize a Statutory Claim of Unjust Termination</u>

In Count II, Plaintiff purports to state a cause of action for "unjust termination, prohibited by the Ohio Revised Code." (Compl. at ¶ 15). Plaintiff has not cited to any Ohio Revised Code provision, because there is no statutory cause of action for "unjust termination" in the Ohio Revised Code, the claim should be dismissed.

3. <u>COUNTS III and IV: Plaintiff Has Not Alleged Any of the Elements of Defamation</u>

In Counts III and IV of the Complaint, Plaintiff alleges that "Defendants [sic] actions constituted slander" and "Defendants [sic] actions constituted liable [sic]," both in violation of the Ohio Revised Code. Again, no statutory cause of action exists for slander or libel (collectively "defamation"), and Counts III and IV should be dismissed.

Moreover, Plaintiff's complaint fails to allege any facts necessary to establish the a common law defamation claim. Pursuant to Ohio law, a Plaintiff must be able to show the

---

[3] The charge of discrimination, filed by Plaintiff with the EEOC, should be considered by the Court as a document of public record. <u>Passa</u>, 123 Fed. Appx. at 697.

following four elements to prevail on a defamation claim: (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence by the publisher, and (4) either the actionability of the statements regardless of special harm or the existence of special harm caused by the publication. Jackson v. City of Columbus, 194 F.3d 737, 757 (6th Cir. 1999). Whether a statement is defamatory is a question of law for the Court to decide. Yeager v. Local Union 20, 453 N.E.2d 666, 669 (Ohio 1983).

In this action, Plaintiff has not alleged a single statement made by any Defendant or any agent or representative thereof. Thus, the Court is unable to even determine as a matter of law whether or not a statement is defamatory. In the absence of any "specific facts" being alleged, Plaintiff cannot "merely rely upon conclusory statements" of libel or slander. Davidson, 285 F. Supp. 2d at 1096. Accordingly, Counts III and IV must be dismissed for failure to state claims upon which relief can be granted.

4. COUNT V: Plaintiff Fails to Allege a Claim of Discriminatory Retaliation

Plaintiff next attempts to state a claim for unlawful retaliation under the Ohio Revised Code. In order to state a claim for discriminatory retaliation under Ohio Revised Code § 4112.02, Plaintiff must allege that he: "(1) engaged in activity protected by the statute, (2) that the exercise of his civil rights was known to the defendant, (3) that the defendant thereafter took employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." Dalton v. Jefferson Smurfit Corp., 979 F. Supp. 1187, 1200 (S.D. Ohio 1997) (citations omitted).

Again, as with his other allegations, Plaintiff has not alleged any specific facts that, if proven, would establish the necessary elements for retaliation. Plaintiff does allege that "during [his] tenure" with the "Defendant Cingular/SBC," he filed unspecified "complaint(s)" at

unspecified times. However, Plaintiff does not allege when in the nine years that he was employed he made such complaint(s). He fails to allege that any decision-maker responsible for his termination had knowledge of such complaint(s). Finally, Plaintiff fails to allege any facts that would give rise to an inference of a causal connection between the filing of complaint(s) and his termination in 2005.

Accordingly, Count V should be dismissed for failure to state a claim upon which relief can be granted.

     5.    COUNT VI: Plaintiff Has Not Alleged the Existence of an Employment Contract

In Count VI, Plaintiff purports to state a claim for breach of contract arising solely out of the termination of his employment. However, Plaintiff fails to allege the existence of any employment contract, whether express or implied, and therefore, the doctrine of employment-at-will bars his claim for breach of contract.

Ohio has long recognized that, absent an express or implied employment contract, employment is at-will and may be terminated for any reason. See, e.g., LaFrance v. Int'l Brotherhood, 108 Ohio St. 61 (Ohio 1923); Henkel v. Educ. Research Council, 45 Ohio St. 2d 249 (Ohio 1976); Fawcett v. G.C. Murphy & Co., 46 Ohio St. 2d 245 (Ohio 1976); Evely v. Carlon Co., 4 Ohio St. 3d 163 (Ohio 1983). The employment at-will "appears to be in the nature of a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." Henkel, 45 Ohio St. 2d at 255.

In Carpenter v. Kaiser Found. Health Plan of Ohio, No. 04CV1689, 2005 U.S. Dist. LEXIS 9465 (N.D. Ohio 2005) (attached hereto as Exhibit "F", the Plaintiff filed 11 different claims, including breach of contract, arising out of the termination of his employment. The

Court dismissed the breach of contract claim pursuant to F.R.C.P. 12(b)(6) because the plaintiff "[did] not even allege that a contract existed, nor [did] he allege facts supporting the inference of a contract's existence.  [The plaintiff did] not allege any factual allegations supporting the claim that [the defendant employer] did not meet its alleged contractual obligations, or that [the defendant] did so without legal excuse. [The plaintiff's] claim for relief for breach of contract clearly falls short of the minimum, notice pleading standard… ." Id. at *11 (citations to record omitted).

Here, Plaintiff has not alleged the existence of any employment contract between himself and any Defendant, and he has not attached to the Complaint any written employment agreement.  Moreover, Plaintiff has not alleged any facts from which it could even be inferred that circumstances exist which "clearly manifest the parties' intent to bind each other." Id.  In the absence of any allegations of an employment contract, the Court must presume that Plaintiff's employment was at-will and dismiss Count VI of the Complaint.

      6.    <u>COUNT VII:  Plaintiff Has Not Alleged the State Action Necessary to State a Claim For Violations of His Equal Protection Rights</u>

In Count VII, Plaintiff alleges that "Defendants [sic] actions constituted violation [sic] of Equal Protection laws, prohibited by the Ohio Revised Code and Federal Law."  (Compl. at ¶ 30).  This claim must also be dismissed.  As explained by the United States Supreme Court:

> In 1883, this Court in <u>The Civil Rights Cases</u>, set forth the essential dichotomy between discriminatory action by the State, which is prohibited by the Equal Protection Clause, and private conduct, "however discriminatory or wrongful," against which that clause "erects no shield,"  <u>Shelley v. Kraemer</u>, 334 U.S. 1, 13 (1948).  That dichotomy has been subsequently reaffirmed in <u>Shelley v. Kraemer, supra</u>, and in <u>Burton v. Wilmington Parking Authority</u>, 365 U.S. 715 (1961).

Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 172 (1972). "[T]he federal and Ohio Equal Protection Clauses are to be construed and analyzed identically." American Ass'n of Univ. Professors v. Central State Univ., 87 Ohio St. 3d 55, 60 (Ohio 1999).

Here, none of the named Defendants are state actors, and no state action is alleged in the Complaint. Accordingly, Count VII must be dismissed.

       7.       COUNT VIII: Ohio Does Not Recognize the Tort of Negligent Infliction of Emotional Distress, and Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress

In Count VIII, Plaintiff allege that Defendants' conduct constituted the torts of negligent and intentional infliction of emotional distress (Compl. at ¶33). Notwithstanding that Plaintiff again incorrectly states that these causes of action can be found in Ohio statutory law, even applying common law principles, the claims must be dismissed.

First, "Ohio courts do not recognize a claim for negligent infliction of emotional distress in the employment context." Mawaldi v. St. Elizabeth Health Ctr., 381 F. Supp. 2d 675, 690 (N.D. Ohio 2005) (citing Antalis v. Ohio Dep't of Commerce, 589 N.E.2d 429 (Ohio Ct. App. Franklin Cty. 1990); Dunn v. Medina Gen. Hosp., 917 F. Supp. 1185 (N.D. Ohio 1996)); see also Hanly v. Riverside Methodist Hosp., 78 Ohio App. 3d 73, 82, 603 N.E.2d 1126, 1132 (1991). Accordingly, Plaintiff's claim for negligent infliction of emotional distress must be dismissed.

In order to state a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must allege the following: (1) that Defendants either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to Plaintiff; (2) that Defendants' conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; (3) that Defendants' actions were the proximate cause of Plaintiffs' psychic injury;

and (4) that the mental anguish suffered by Plaintiff is serious and of a nature that no reasonable person could be expected to endure it. Mawaldi, 381 F. Supp. 2d at 690; see also, Carpenter, 2005 U.S. Dist. LEXIS 9465 at * 9.

In Carpenter, supra, the Plaintiff alleged, among other claims, that the termination of his employment violated Title VII's prohibition on sex discrimination and constituted the tort of IIED. Carpenter, 2005 U.S. Dist. LEXIS 9465 at * 1-2. The defendant employer sought dismissal of all counts pursuant to F.R.C.P. 12(b)(6). The Court granted the motion to dismiss for failure to state a claim for IIED, and explained:

> A claim for IIED is valid only where a defendant's conduct is so extreme and outrageous that it "goes beyond all bounds of decency." Yeager v. Local Union 20, 6 Ohio St. 3d 369, 453 N.E.2d 666, 671 (Ohio 1983). To state a proper claim, [the plaintiff] must allege direct or inferential factual support for all of the material elements of a cause of action. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). [The plaintiff] states only that, "the actions of Defendant resulted in the intentional infliction of emotional distress," and that [the plaintiff], "has suffered injury, damage and loss, including emotional distress and other damage." [The plaintiff] fails to set forth allegations describing what conduct of [the defendant] allegedly caused the emotional distress, that those actions were extreme and outrageous, and that the alleged conduct was the proximate cause of [the plaintiff's] distress. [The plaintiff] merely relies on a conclusory statement, which is not sufficient to state a proper claim. Papasan v. Allain, 478 U.S. 265, 286 (1986).

Id. at * 9-10 (citations to record and footnote omitted).

In the case at bar, Plaintiff has alleged only that Defendants actions "constituted violation an [sic] intentional and negligent infliction of Emotional Distress" and that as a result of Defendants' actions "the Plaintiff was caused to incur severe emotional distress, humiliation, loss of income, attorney fees, and other losses more fully adduced at the trial of this lawsuit." (Compl. at ¶¶ 33-34). Thus, Plaintiff's allegations of harm are almost identical to those of the

Plaintiff in Carpenter. Moreover, Plaintiff here also fails to allege what conduct of any Defendant caused his emotional distress[4] and that the conduct was severe and outrageous.

Therefore, as in Carpenter, Plaintiff's IIED claim must be dismissed.

---

[4] While not specifically alleged, to the extent that Plaintiff's IIED claim arises out of the same facts as his defamation claims, the IIED claim must be dismissed. Such an IIED claim is "entirely derivative of the defamation claim" McGee v. Simon & Schuster, Inc., 154 F. Supp. 2d 1308, 1315-16 (S.D. Ohio 2001). Because the defamation claims must be dismissed for the reasons set forth above, "the emotional distress claim cannot survive the dismissal of the underlying cause of action." (citations omitted). Id.

IV.     **CONCLUSION**

In accordance with the foregoing, Movants respectfully request that this Honorable Court grant their Motion to Dismiss in its entirety.

Respectfully submitted,

/s/ Jennifer A. Corso
WEGMAN, HESSLER & VANDERBURG
Jennifer A. Corso  (0063667)
6055 Rockside Woods Blvd.
Cleveland, Ohio 44131
phone:  (216) 642-3342
fax:  (216) 642-8826
jacorso@wegmanlaw.com

/s/ Todd J. Shill
RHOADS & SINON LLP
Todd J. Shill, *pro hac vice pending*
tshill@rhoads-sinon.com
One South Market Square
P. O. Box 1146
Harrisburg, PA 17108-1146
phone:  (717)  233-5731
fax:       (717) 231-6637

Attorneys for Defendants "Cingular Wireless," "AT&T Wireless" and "SBC"